*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2104**

In re the Marriage of: Kathryn R. Rauworth,
n/k/a Kathryn R. Kendall, petitioner,
Respondent,

vs.

Barry L. Rauworth,
Appellant.

**Filed February 2, 2015
Affirmed in part, reversed in part, and remanded
Hooten, Judge**

Dakota County District Court
File No. 19HA-FA-12-1048

Mark A. Olson, Olson Law Office, Burnsville, Minnesota (for respondent)

Kay Nord Hunt, Marc A. Johannsen, Lommen Abdo, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

On appeal from an amended judgment and decree in a dissolution action, appellant-husband challenges the district court's increase of his spousal maintenance obligation and the retroactive award of increased maintenance. On related appeal,

respondent-wife challenges the district court's designation of certain assets as husband's nonmarital property, its denial of her claims that husband improperly disposed of marital assets, and its denial of her requests for permanent maintenance and attorney fees. We affirm in part, reverse in part, and remand to the district court for further proceedings.

**FACTS**

Appellant Barry Lee Rauworth and respondent Kathryn Ruth Rauworth, now known as Kathryn Kendall, were married on September 12, 1987. The parties separated and began living apart on November 1, 2010. After a lengthy and partially successful attempt at reaching a collaborative settlement, Kendall filed a petition for dissolution of the marriage on October 23, 2012. The remaining disputes between the parties centered on spousal maintenance, identification and division of marital property, and attorney fees. In February 2013, less than five months after the dissolution petition was filed, a trial was held at which the parties, Kendall's mother, and Kendall's financial expert testified.

Both parties testified as to their past and current income from employment. Kendall testified that she had worked part-time while caring for the couple's two children and was currently employed full-time as a graphic designer. Rauworth, a products development engineer, worked full-time throughout the marriage, with the exception of a three-month gap when he changed employers. In addition to his yearly salary, Rauworth received a benefits package and periodic bonuses from his current employer. Kendall's financial expert testified and submitted a report on the historical cash flow for each of the parties. The report also calculated the tax consequences of various potential spousal maintenance scenarios.

When the parties separated, Kendall left the marital home in Norwood Young America and moved in with her mother in Hastings. She testified that Rauworth remained in control of the majority of the marital funds after the separation. She expressed concern as to Rauworth's excessive post-separation spending habits. She claimed that Rauworth had not told her about his use of the marital funds, including over $100,000 in withdrawals from a jointly-owned investment account. She further testified that Rauworth had forged her signature on a tax refund check and deposited the check into his own account without notifying her. In response to Kendall's claims, Rauworth explained that he had used marital assets, including funds he withdrew from the investment account, to pay all the household expenses and debts of the couple after separation, including the mortgage for the marital home, insurance, back taxes, a college-education loan, and the costs associated with the parties' participation in the collaborative settlement process. Both parties also submitted proposed monthly expense budgets to the district court, based on claimed future expenses.

Rauworth also testified as to a $47,951[1] check he had received during the marriage due to his role as a partner with RMR Enterprises. This partnership is managed by their brother, and obtains income from crop sharing on land held by the partnership. He testified that he had received the $47,951 distribution check from RMR as proceeds from the partnership's decision to cash in a life insurance policy the partnership had taken out

---

[1] The district court refers to the amount of this check as $46,362.79, but the transcript and exhibits show a distribution amount of $47,951.

for Rauworth's mother. Rauworth testified that he had not yet cashed the check and claimed that this check remained an asset of RMR.

After trial, the district court ordered Rauworth to pay $1,800 per month of rehabilitative spousal maintenance, beginning on May 1, 2013 and ending on April 30, 2025. The district court further concluded that the $47,951 check from RMR and a $1,000 life insurance policy are the nonmarital property of Rauworth, that Rauworth did not improperly dispose of marital funds from either the investment account or the tax refund check, and that neither party was entitled to attorney fees. The district court then divided the marital property accordingly, awarding each party approximately $800,000 in marital assets.

Kendall moved for amended findings under Minn. R. Civ. P. 52.02 or a new trial under Minn. R. Civ. P. 59.01. Rauworth contested the motion. The district court granted the motion for amended findings in part and entered an amended judgment and decree, pursuant to an order detailing its amendments. Among other changes, the district court increased the amount of monthly spousal maintenance to $2,370, in light of "the tax consequences of spousal maintenance." The district court also made its maintenance award retroactive to November 1, 2012. This appeal by Rauworth and a related appeal by Kendall followed.

## DECISION

### I.

Rauworth challenges the district court's decision to amend its judgment and decree, claiming that the district court erred both by increasing his spousal maintenance

4

obligation and making his obligation retroactive. On related appeal, Kendall challenges the duration of the maintenance award, claiming that the district court should have awarded permanent maintenance.

## A. Increase in Spousal Maintenance

Rauworth first argues that the district court abused its discretion when it increased his spousal maintenance obligation in the amended judgment and decree because such increase was based upon evidence which was outside of the trial record. Rauworth contends that this new evidence, a financial worksheet attached by Kendall to her rule 52.02 motion, is not only outside of the record but also inaccurate and speculative.

Rule 52.02 allows a party to move the district court for amendment of the district court's findings or judgment, and "may be made on the files, exhibits, and minutes of the court." Minn. R. Civ. P. 52.02. When considering a rule 52.02 motion, the district court is required to "apply the evidence as submitted during the trial of the case, and may neither go outside the record, nor consider new evidence." *Zander v. Zander*, 720 N.W.2d 360, 364 (Minn. App. 2006) (quotations omitted), *review denied* (Minn. Nov. 14, 2006). "The purpose of a motion to amend," under rule 52.02, "is to permit the trial court a review of its own exercise of discretion." *Stroh v. Stroh*, 383 N.W.2d 402, 407 (Minn. App. 1986). Accordingly, we review the district court's decision on such motions under an abuse of discretion standard. *Zander*, 720 N.W.2d at 364.

Kendall's motion for amended findings argued that the district court failed to consider the tax consequences of her receipt of spousal maintenance. The attachment to her motion set forth the tax consequences of an increased maintenance amount and

5

indicated that Kendall needed to receive another $570 in order to receive a net monthly spousal maintenance amount of $1,800. In response to Kendall's motion to amend, the district court increased the maintenance obligation to $2,370 in its amended judgment and decree, the exact increase proposed by Kendall. The district court explained:

> The Court agrees with [Kendall] that it overlooked the tax consequences when determining the amount of the spousal maintenance award. . . . The net or take-home income of a spouse does include the tax consequences of all income, including spousal maintenance. When taking into consideration the tax consequences that are associated with the spousal maintenance, [Kendall's] reasonable monthly needs, and her income, the J&D will be amended to reflect [the] fact that $2,370 in spousal maintenance is necessary for [Kendall] to meet her reasonable needs.

District courts are allowed to consider the tax consequences of maintenance awards when evidence of those consequences is presented at trial. *See Kampf v. Kampf*, 732 N.W.2d 630, 634–35 (Minn. App. 2007), *review denied* (Minn. Aug. 21, 2007). This discretion is not unlimited, as the district court must have a "reasonable and supportable basis for making an informed judgment as to the probable liability." *Maurer v. Maurer*, 623 N.W.2d 604, 608 (Minn. 2001) (quotation omitted). The district court acts within its discretion so long as its tax calculation does not "fall outside a reasonable range of figures." *Id.* at 609 (quotation omitted).

The issue, then, is whether there is evidence in the record that would support the increase of Kendall's spousal maintenance to cover for the tax consequences in the amended judgment and decree. While the attachment to Kendall's motion to amend was not part of the trial record and, to the extent it contains information not otherwise

6

properly before the district court, cannot be considered by the district court, *Zander*, 720 N.W.2d at 364, there is no indication that the district court relied only upon this post-trial submission in calculating the increase in Kendall's maintenance. There were sufficient facts in the trial record, outside of Kendall's post-trial motion, to support the district court's decision. In the original judgment and decree, the district court found that, with a reasonable monthly budget of $4,383 per month and a net monthly income of approximately $2,500 per month, Kendall was left with a shortfall of $1,883 each month. Based on these findings, the district court had originally awarded Kendall monthly spousal maintenance of $1,800. One of the scenarios provided at trial by Kendall's financial expert was a hypothetical spousal maintenance payment of $2,300 per month, leaving Kendall with an after-tax monthly cash flow of $4,221 per month, $162 short of Kendall's reasonable monthly budget. This scenario, which took into account these tax ramifications, supports the district court's amended maintenance award of $2,370.

This relatively modest increase of $570 per month in spousal maintenance also does not unduly prejudice Rauworth, who earns a gross income of $8,567 per month plus bonuses. Under the amended judgment and decree, his net monthly income was approximately $6,200 and his reasonable monthly expenses were $4,383, the same as Kendall's expenses, leaving a surplus of $1,817. Rauworth will also be able to deduct this additional maintenance of $570 for income tax purposes, thereby decreasing his income tax liability. *See* 26 U.S.C. § 215(a) (2012). Because its decision was supported by the record without considering Kendall's post-trial submissions, the district court did not abuse its discretion by increasing Rauworth's spousal maintenance obligation.

**B. Retroactivity of Spousal Maintenance**

Rauworth claims that the district court erred by amending its judgment and decree to make its spousal maintenance award retroactive to November 1, 2012.  We agree.

The record shows that Kendall improperly raised this issue for the first time in her motion for amended findings or a new trial.  In its original judgment and decree, the district court ordered maintenance payments to commence on May 1, 2013.  Kendall's motion for amended findings or a new trial subsequently asked the district court to amend its conclusions of law to make maintenance retroactive to November 1, 2012.  A new issue is raised "too late" when first raised in either a motion for amended findings, *Allen v. Central Motors*, 204 Minn. 295, 297, 283 N.W. 490, 492 (1939), or a motion for a new trial, *Antonson v. Ekvall*, 289 Minn. 536, 539–39, 186 N.W.2d 187, 189 (1971).

A proposed starting date for maintenance was not addressed in the pleadings.  Kendall's petition for dissolution failed to explicitly request a maintenance award commencing from the date of that petition.  General language in the pleadings is only sufficient to raise an issue if it "would alert anyone to a claim" based on that issue.  *See Antonson*, 289 Minn. at 539, 186 N.W.2d at 189.  Kendall's broad request for maintenance was insufficient to put Rauworth on notice that she would be requesting not only *prospective* maintenance, but also *retroactive* maintenance for the period of the dissolution proceeding.  Furthermore, after filing her petition, Kendall could have moved the district court for temporary maintenance during the dissolution proceeding under Minn. Stat. § 518.131, subd. 1(b) (2014).  She failed to do so.

8

This issue was also not litigated at trial. Evidence provided by Kendall as to her monthly living expenses was not based on her then-current budget while living with her mother. The issue of whether to make maintenance retroactive "was not within the pleadings nor . . . litigated by consent" if raised for the first time after the trial record had closed. *See Allen*, 204 Minn. at 297, 283 N.W. at 492. While Kendall did recommend November 1, 2012 as the starting date for maintenance, this recommendation came in a post-trial submission that did not bring the issue and any necessary accompanying evidence before the district court in a timely fashion.

Therefore, a claim for retroactive maintenance was not properly before the district court in this proceeding, and the district court abused its discretion by making its maintenance award retroactive upon a motion for amended findings or a new trial. Accordingly, we reverse the award of maintenance for the months the dissolution action was pending and remand for the district court to subtract these amounts from Rauworth's obligation to Kendall.[2]

**C. Permanent Maintenance**

Kendall claims that the district court erred by not awarding her permanent maintenance. She contends that the district court erred as a matter of law by finding that her financial situation would improve at the time of retirement, but then finding that her

---

[2] It is therefore unnecessary for us to determine whether the district court erred by amending its spousal maintenance award to run in excess of 12 years, as our reversal restores the initial 12-year period ordered by the district court and supported by its findings.

potential employment pay increases were uncertain. She further argues that there was no evidence in the record showing that she would become self-supporting in the future.

"[A] district court must order permanent maintenance if the court is uncertain that the spouse seeking maintenance can ever become self-supporting." *Maiers v. Maiers*, 775 N.W.2d 666, 668 (Minn. App. 2009) (quotation omitted). Courts are further instructed not to favor a temporary award over a permanent award "where the factors . . . justify a permanent award," and "shall" order a permanent award even if "there is some uncertainty as to the necessity of a permanent award." Minn. Stat. § 518.552, subd. 3 (2014). The burden of proof is on the spouse seeking maintenance under section 518.552. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997). We review an award of temporary maintenance for abuse of discretion. *Id.*

Kendall appears to be conflating the district court's uncertainty as to her future salary with its finding as to her future entitlement to retirement benefits. The district court's uncertainty as to her potential salary increases was used to justify its finding as to her monthly income for purposes of calculating the necessary *amount* of maintenance. But the district court was not uncertain about the needed *duration* of the maintenance award. It explicitly found that a "twelve-year award will allow [Kendall] to bridge the gap between now and retirement, [when] she will be able to supplement her income and live off the substantial retirement funds that are being award[ed] to her."

The award of retirement funds was relevant to a statutory factor the district court was directed to examine: the party's financial resources and "ability to meet needs independently." Minn. Stat. § 518.522, subd. 2(a). The district court is vested with

10

significant discretion in determining a party's financial independence, as the maintenance statute contains "no directives for how a district court is to evaluate a 'party's ability to meet needs independently.'" *See Rauenhorst v. Rauenhorst*, 724 N.W.2d 541, 545 n.2 (Minn. App. 2006) (quoting Minn. Stat. § 518.552, subd. 2(a) (2004)). Kendall received nearly $600,000 of retirement account funds in the dissolution. While Kendall testified at trial as to the taxes and penalties she would incur for a *current* withdrawal of those funds, nothing in the record indicates why she could not receive normal distributions from these substantial retirement accounts once she reached retirement age. Moreover, if at the time of retirement she cannot meet her expenses, she can move to modify her maintenance award at that time.

The district court's finding that Kendall would gain financial independence due to her access to substantial retirement funds upon reaching retirement age is supported by the record. Its conclusion that an award of rehabilitative maintenance would be fair and just was therefore within its discretion.

## II.

Kendall argues that the district court abused its discretion by ruling certain property to be the nonmarital property of Rauworth: an RMR Enterprises check for $47,951, and a life insurance policy. Property acquired by spouses during marriage is presumed to be "marital property." Minn. Stat. § 518.003, subd. 3b (2014). The spouse seeking to overcome this presumption bears the burden of proving the asset is nonmarital by a preponderance of the evidence. *Kerr v. Kerr*, 770 N.W.2d 567, 569 (Minn. App. 2009). "Nonmarital property" includes property that was received by one spouse but not

11

the other as a gift or by inheritance, acquired before the marriage, or acquired in exchange for other nonmarital property. Minn. Stat. § 518.003, subd. 3b(a)–(c). "Whether property is marital or nonmarital is a question of law, but reviewing courts defer to the district court's findings of fact unless they are clearly erroneous." *Chamberlain v. Chamberlain*, 615 N.W.2d 405, 412–13 (Minn. App. 2000), *review denied* (Minn. Oct. 25, 2000).

### A. RMR Distribution Check

We first address the $47,951 distribution check from RMR Enterprises. It is undisputed that Rauworth's partnership interest in RMR is his nonmarital asset. The distribution check, which at the time of trial had not been cashed by Rauworth, included both his regular share of RMR profits and his share of the value of a life insurance policy taken out on Rauworth's mother which RMR had later traded in for cash. Rauworth testified that RMR purchased the policy after the parties' marriage in order to pay for any potential inheritance taxes that would result if Rauworth's mother passed away. Rauworth also testified that RMR paid the policy premiums with partnership income. The district court concluded that:

> [Kendall] claims that this check is "marital in nature;" however, she does not provide any explanation why this is marital other than to state that the parties paid taxes on this distribution in their 2011 joint tax returns. This is insufficient. Neither party contributed to the purchase, the acquisition, or the preservation of, those funds received from RMR Enterprises. These funds are an asset of the partnership received from the inheritance and therefore remain [Rauworth's] non-marital property.

12

Kendall challenges this aspect of the district court's ruling, arguing that the district court erred by wrongly placing the burden of proof on her. Kendall further argues that distribution of this check to Rauworth constituted "income" received from RMR and therefore that the funds represented by the check are marital property. On appeal, Rauworth asserts, as he did at trial, that he left the associated funds "within" RMR and therefore that they are his nonmarital property.

It is undisputed that Rauworth received the 2011 RMR distribution check during the marriage. Therefore, it is presumed that the funds represented by that check are marital property. Minn. Stat. § 518.003, subd. 3b. Because the funds are presumptively marital, Rauworth had the burden to show that they were, in fact, nonmarital. *Kerr*, 770 N.W.2d at 569. Further, this also means that the district court's determination that the funds are Rauworth's nonmarital property *because* Kendall failed to "provide any explanation why [the funds are] marital" is based on an incorrect identification of which party had the burden of showing the nature of those funds.

While not clear, it appears that Rauworth's refusal to cash the 2011 RMR distribution check is an attempt to keep the associated funds separate from the marital estate, and ensure that those funds are treated as his nonmarital property. On this record, however, we must conclude, as a matter of law, that the funds represented by the 2011 RMR distribution check are marital.

Generally, gross income "includes any form of periodic payment to an individual." Minn. Stat. § 518A.29(a) (2014).[3] The cyclic or periodic nature of the receipt of funds is critical to classifying that receipt of funds as "income." *Duffney v. Duffney*, 625 N.W.2d 839, 843 (Minn. App. 2001). Here, Rauworth testified that during the marriage he received annual payments from RMR as his shares of the rental income earned by RMR, and that he would place these payments into the parties' joint bank accounts and use the funds for marital expenses. The 2011 distribution check was thus one in a series of payments that Rauworth received from RMR during the marriage, and is distinguishable from other RMR distribution checks only because it represented both his usual share of rental income *and* his share of the cash proceeds of the life insurance policy on his mother. Because the 2011 distribution check was one of a series of periodic payments to Rauworth during the marriage, it was "income."

Income generated by a nonmarital asset during a marriage usually is marital. *See Gottsacker v. Gottsacker*, 664 N.W.2d 848, 854 (Minn. 2003) ("If the interest is 'income' from the nonmarital asset, it is marital income."); *Nardini v. Nardini*, 414 N.W.2d 184, 194 (Minn. 1987) (stating that cash distributions received during a marriage are typically "considered a return on the investment or income and, therefore . . . [are] marital property."). In the case of a closely-held corporation's earnings that are retained by the corporation and *not* distributed to its interest holders, *Gottsacker* directs courts to determine, on a case-by-case basis, whether the retained earnings are income to an

---

[3] While these definitions are contained within the child support chapter of the Minnesota Statutes, they are also applicable to proceedings under chapter 518. *See* Minn. Stat. § 518A.26, subd. 1 (2014).

14

interest-holder spouse. *Gottsacker*, 664 N.W.2d at 856–57. Courts do so by looking at the degree of control the interest-holder spouse has over whether the corporation distributes funds, and to determine whether any retention of funds by the corporation is to shield those funds from the other spouse or because the interest-holder spouse has no ability to require funds to be distributed. *Id.*

Here, there are no retained earnings at issue. While Rauworth apparently lacked control over whether RMR chose to distribute the cash proceeds of the life insurance policy, RMR did distribute the proceeds of the insurance policy. And once the distribution check was in Rauworth's possession, he, not RMR, controlled those funds. *See Robert v. Zygmunt*, 652 N.W.2d 537, 543 (Minn. App. 2002) (stating that amounts distributed by a closely held corporation belonged to the person to whom those funds were distributed once they were "severed from other corporate assets and distributed as dividends"), *review denied* (Minn. Dec. 30, 2002). Therefore, even if Rauworth is correct in asserting that his refusal to cash the 2011 distribution check means that the funds represented by that check are still "within" RMR, he has control of those funds.

Finally, the record is otherwise void of any attempt or argument by Rauworth to rebut the presumption of marital property and show that the funds represented by the 2011 RMR distribution check are his nonmarital property. Thus, on this record, Rauworth failed to show that the funds represented by the 2011 RMR distribution check should be deemed his nonmarital property, and as a result the funds represented by this check are marital property that should have been divided between the parties. We reverse and remand this issue for the district court to equitably divide the $47,951 check. If the

15

district court's ruling on remand requires that other aspects of the property division be adjusted to achieve an equitable property distribution, the district court shall have the discretion to adjust the property division accordingly.

### B. Life Insurance Policy

We next address the Washington life insurance policy. The district court ruled that this $1,000 life insurance policy with a cash surrender value of $560.24 is Rauworth's nonmarital property. Kendall challenges this ruling, arguing that Rauworth failed to produce any documentation showing when the policy was created or how it was funded, and therefore he failed to show that the policy was his nonmarital asset. On this record, even if we assume that the district court erred by treating the Washington life insurance policy as Rauworth's nonmarital property, the effect of any such error is de minimis; each party was awarded substantial retirement account funds and retained other sizable life insurance policies. Therefore, while we grant the district court discretion on remand to address whether and to what extent the property is marital property, we decline to require it to do so. *See Risk ex rel. Miller v. Stark*, 787 N.W.2d 690, 694 n.1 (Minn. App. 2010) (declining to remand for district court failure to account for $400 of value when classifying property), *review denied* (Minn. Nov. 16, 2010); *Wibbens v. Wibbens*, 379 N.W.2d 225, 227 (Minn. App. 1985) (declining to remand for district court error in calculating child support to account for a cost-of-living increase worth $120).

### III.

Kendall asserts that after the parties separated, Rauworth disposed of funds in a jointly owned investment account by using that account to pay off credit card debt that

16

Rauworth accumulated through excessive and frivolous expenditures. She claims that the district court erred in determining that most of Rauworth's withdrawals from the account were in the normal course of living. Kendall further contends that the district court erred in finding that she had not proven her claim that Rauworth forged her name on a 2010 tax refund check and improperly expended the funds.

The district court "shall" require one party to compensate the other when that party transfers, encumbers, conceals, or disposes of marital assets, unless the assets are expended "in the usual course of business or for the necessities of life." Minn. Stat. § 518.58, subd. 1a (2014). The burden of proof is on the party asserting the wrongful disposition of marital assets. *Id.* "A [district] court has broad discretion in evaluating and dividing property in a marital dissolution and will not be overturned except for abuse of discretion." *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002).

### A. Investment Account

The district court did not err in finding that Kendall failed to prove that Rauworth disposed of funds in their investment account. Rauworth testified and provided exhibits documenting his use of the withdrawn account funds. This included the payment of taxes and mediation fees, expenses associated with his attempts to reconcile with Kendall, attorney fees, and costs related to preparing the marital home for sale. Rauworth also continued to pay costs associated with the parties' adult children. Kendall presented a list of charges from Rauworth's credit card that she claims indicated excessive spending, mostly for restaurants and vacation expenses. However, she testified at trial that the parties did not live within a budget during marriage, frequently eating out at restaurants

and going on vacations. Kendall also spent marital funds in a similar manner, taking several trips while the parties were separated. The evidence supports the district court's determination that many of the expenses Kendall disputes were consistent with the level of spending the parties enjoyed during the marriage. Further, the district court did not blindly endorse appellant's spending habits; it shifted $11,117.30 to Kendall based on Rauworth's use of marital funds for an online dating service and legal fees. The evidence supports the district court's conclusion that the funds withdrawn from the investment account were not used by Rauworth in violation of Minn. Stat. § 518.58, subd. 1a.

### B. 2010 Tax Refund

Kendall also claims that the district court erred in finding she had failed to prove that Rauworth improperly disposed of a 2010 tax refund check. The record shows that the check was deposited into a bank account controlled solely by Rauworth. But, as noted by the district court, Kendall failed to provide any evidence as to how those funds were subsequently spent. Kendall had the burden of proof in alleging wrongful use of those funds. *See* Minn. Stat. § 518.58, subd. 1a. Because she failed to provide evidence showing that Rauworth improperly disposed of the funds, the district court did not err in finding her claim to be unsubstantiated.

In *Griepp v. Griepp*, this court upheld a district court's determination that the disposition of tax refund monies was not proven when there was no basis in the record to conclude that the refunds were not spent on living expenses. 381 N.W.2d 865, 869 (Minn. App. 1986). Kendall attempts to distinguish *Griepp* because the tax refund amount is known here, whereas the refund check stub was absent from the record in

18

*Griepp. Id.* However, certainty as to the amount of the refund check is not instructive as to how Rauworth spent the funds. As in *Griepp*, the lack of evidence in support of Kendall's claim shows the district court did not err in declining to find Rauworth had improperly disposed of the funds.

**IV.**

Kendall challenges the district court's decision not to award attorney fees to either party, contending that the district court erred in denying her attorney fees request. Attorney fees can be awarded by the district court in marital dissolution proceedings, based on either need or conduct of the parties. Need-based fees "shall" be awarded by the district court if it finds:

> (1) that the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding;
> (2) that the party from whom fees, costs, and disbursements are sought has the means to pay them; and
> (3) that the party to whom fees, costs, and disbursements are awarded does not have the means to pay them.

Minn. Stat. § 518.14, subd. 1 (2014). The district court "may" also award conduct-based fees and costs "against a party who unreasonably contributes to the length or expense of the proceeding." *Id.* "An award of attorney fees under [section 518.14] rests almost entirely within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion." *Schallinger v. Schallinger*, 699 N.W.2d 15, 24 (Minn. App. 2005) (quotation omitted).

19

Kendall claims that the district court should have awarded need-based fees. Given our deference to the district court and the circumstances of this case, Kendall's arguments are unpersuasive. The district court found that the parties' income and property were "sufficient to provide for their reasonable needs" in denying need-based attorney fees. This finding is supported by the record. Kendall has a full-time job, received nearly $800,000 worth of marital property as a result of the dissolution, and will continue to receive substantial spousal maintenance payments from Rauworth until 2025. The district court specifically found that the first statutory factor, lack of means to pay fees, was not present, and Kendall has not shown how the district court abused its discretion in thereby refusing to award need-based attorney fees.

Kendall also claims that the district court erred and should have awarded conduct-based fees. The district court found that neither party was entitled to conduct-based attorney fees because the length of the process was actually tied to the collaborative law process, not litigation, and neither party "acted in bad faith" or "contributed to the delay or expense of this matter." Kendall cites numerous actions by Rauworth that she contends delayed the proceedings, including untimely discovery responses and his wrongful use of marital assets. However, the parties agreed to an informal exchange of discovery after the initial case-management conference and shortly before trial, and Kendall had an opportunity to examine those documents before trial. No motions were brought by either party that served to delay the case or increase its expense. Trial in this case was completed less than six months after the dissolution petition was filed. The record supports the district court's finding that neither party unreasonably delayed the

proceedings. As a result, the district court's decision not to award Kendall conduct-based attorney fees was not an abuse of discretion.

In sum, we affirm the district court's decision to increase the amount of spousal maintenance and make the maintenance award temporary. We also affirm the district court's determination that Kendall did not prove improper use of marital assets by Rauworth, and that neither party should be awarded attorney fees. We reverse the district court's decision to order retroactive spousal maintenance from the date of the dissolution petition filing and its determination that the RMR distribution is nonmarital property. Accordingly, we remand these issues to the district court for further proceedings consistent with this decision.

**Affirmed in part, reversed in part, and remanded.**